UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**DANIEL ANTHONY PEACE**,

          Plaintiff,

v.                             **Case No. 15-cv-276-pp**

**WILLIAM POLLARD, et al.**,

          Defendants.

**DECISION AND ORDER ALLOWING PLAINTIFF TO PROCEED *IN FORMA PAUPERIS*, DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 3), DENYING AS MOOT PLAINTIFF'S MOTION FOR USE OF PRISON RELEASE ACCOUNT TO PAY PARTIAL FILING FEE (DKT. NO. 9), DENYING PLAINTIFF'S MOTION *IN LIMINE* (DKT. NO. 15), AND SCREENING PLAINTIFF'S COMPLAINT**

      The plaintiff, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that his civil rights were violated at Waupun Correctional Institution. The case comes before the court on the plaintiff's motion to appoint counsel (Dkt. No. 3), the plaintiff's motion for use of his prison release account to pay the initial partial filing fee (Dkt. No. 9), the plaintiff's motion *in limine* (Dkt. No. 15), and for screening of the plaintiff's complaint.

I.     ***IN FORMA PAUPERIS* STATUS**

      The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff

1

pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On March 2, 2015, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $7.79. Dkt. No. 13. The plaintiff filed a motion asking to use his prison release account to pay the partial filing fee, but the court received the initial partial filing fee before it had ruled on that motion. Because the court has received the initial partial filing fee, the court will deny as moot the plaintiff's motion to use his prison release account to pay it. The court will allow the plaintiff to proceed *in forma pauperis*, and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II.    SCREENING OF PLAINTIFF'S COMPLAINT

### A.    Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss part or all of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous when "it lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams,

2

490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the "factual contentions are clearly baseless." Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

3

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B. Facts Alleged in the Complaint

In his nineteen-page complaint, the plaintiff names fifteen defendants. He concludes with a laundry list of legal theories, many of which either are not claims or do not apply to the facts he states. The plaintiff's claims relate primarily to medical treatment for the plaintiff's chronic headaches while he was on temporary lockup (TLU) status, and property that was missing when he was released from TLU status.

4

The plaintiff has a history of head injuries and, as a result, he suffers from chronic headaches. Dkt. No. 1 at 8. After a hospital visit on March 29, 2014, the plaintiff received discharge instructions regarding his chronic headaches. Id.

On September 30, 2014, the plaintiff started a new prison job and moved to a new cell. Id. During the transition, the plaintiff's locker was without a padlock. Id. That evening, the plaintiff had an interview Lt. Larsen about alleged sexual misconduct. Id. After the plaintiff described the crime for which he was in prison and a prior conduct report, Lt. Larsen informed the plaintiff that his cellmate said the plaintiff touched him in a sexual way. Id. Lt. Larsen placed the plaintiff in TLU status for an investigation into sexual misconduct. Id. at 9.

During medication pass time on October 17, 2014, the plaintiff asked for his headache medication, but the correctional officer said that the last time the plaintiff was scheduled to take medication was 4:00 p.m. Id. The plaintiff wrote a psychological services request form that day, and defendant Nurse Amy R. responded the next day. Id. She wrote: "you may not have meds in your cell; you may try relaxation, meditation, or cool compresses." Id. The plaintiff wrote to the Health Services Unit manager, and defendant Donna Larson responded, "all medications are controlled on A+B range. I will schedule you with a nurse to better manage your headaches, your medications are not ordered during those times. They are ordered AM (naproxen) and AM+PM [] as needed." Id.

5

The plaintiff was released from TLU status on October 22, 2014, and received a segregation personal property and property inventory sheet. Id. The next day, the plaintiff got his personal property back, but he alleges that some items were missing. Id.

The plaintiff filed inmate complaints regarding both his headache medication and his missing property. On October 28, 2014, the plaintiff filed an inmate complaint complaining that he did not receive his medication for his chronic headaches while in segregation. Id. at 10. This complaint was rejected on December 16, 2014, because the inmate complaint examiner believed it was filed beyond the fourteen calendar day limit. Id. She based this conclusion on the date the plaintiff was placed on TLU status (September 30, 2014) and the date the plaintiff filed his complaint (October 28, 2014), not the date he first asked for the medication on TLU status (October 17, 2014). The plaintiff appealed the rejection of his inmate complaint on December 21, 2014, and explained that while he was on TLU status, he did not ask for Excedrin until October 17, 2014, and therefore he argued that his complaint was timely. Id. at 11. Despite the plaintiff's arguments, Health Service Coordinator Lori Alsum rejected the appeal. Id. She wrote: "Medications were ordered AM and PM (PRN) only and would be available to him during the AM and PM medication passes. Pt advised to submit an HSR for an evaluation." Id.

C.  Legal Analysis of Alleged Facts

As in other cases he has filed with this court, the plaintiff asserts that the defendants "were in complicity to retaliation on the petitioner." Dkt. No. 1

6

at 7. To the extent that the plaintiff is attempting to state a conspiracy claim, the intracorporate-conspiracy doctrine bars that claim because all of the defendants work for the same state agency—namely, the Wisconsin Department of Corrections. See Beese v. Todd, 35 Fed. Appx. 241, 243 (7th Cir. 2002); Payton v. Rush-Presbyterian, 184 F.3d 623, 632 (7th Cir. 1999).

To the extent that the plaintiff wants to proceed on a retaliation claim, he must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted). The plaintiff does not suggest in the body of his complaint, however, that any action or actions taken by the defendants were the result of his engaging in any specific activity protected by the First Amendment.

A significant portion of the plaintiff's complaint relates to the property he lost while he was in TLU status. The plaintiff does not allege that his property was lost due to some established procedure, or that Wisconsin's post-deprivation remedies were inadequate to redress the damage. What the plaintiff has described is random and unauthorized conduct that resulted in his property being lost. "When a state official's conduct is random and unauthorized, due process requires only that an adequate post-deprivation remedy exists." Johnson v. Wallich, 578 Fed.Appx. 601, 602 (7th Cir. 2014) (citations omitted). "By statute, Wisconsin affords procedures that can address

7

random, unauthorized deprivations of property by state officers and officials." Id.

The plaintiff does not state a due process claim regarding his lost property, and even if he had, there is an adequate remedy at state law. Accordingly, the court will dismiss the defendants involved in this claim, including Lt. Larsen, William Pollard, Charles Facktor, Cindy O'Donnell, Tony Meli, Sgt. John Danke, Captain Olsen, and Jane Doe, Security Office Secretary.

The court will now turn to the plaintiff's medical care claims regarding the alleged change in his access to his headache medication. "To state an Eighth Amendment claim based on deficient medical care, a plaintiff must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) (citing Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011)).

At this stage, the court will assume that the plaintiff's chronic headaches are a serious medical condition. The plaintiff submitted HSRs to defendants Amy R. and Donna Larson regarding delays in treatment and failure to treat his headaches. He was not allowed to keep his headache medication in his cell in TLU status, and he was unable to access it at any time other than during the two scheduled medication passes per day. The court finds that the plaintiff has articulated a claim for which federal relief could be granted, and will allow

the plaintiff to proceed on Eighth Amendment medical care claims against defendant Amy R. and Donna Larson.[1]

Next the court will consider the plaintiff's claims against those defendants who reviewed his inmate complaints regarding his medical issue. "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a complete act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007).

The plaintiff was released from TLU status before he filed his inmate complaint on October 28, 2014. Since his claim relates to the medication rules in TLU status and access to his headache medication, the violations were complete by the time defendants Tonia Moon and Lori Alsum had the opportunity to weigh in on the issue. Even if Moon made a mistake when she concluded that the plaintiff's complaint was untimely, the mishandling of an inmate grievance by someone who "did not cause or participate in the underlying conduct states no claim." Owens v. Hinsley, 635 F.3d 950, 953-54 (7th Cir. 2011) (citations omitted). Thus, the court will not allow the plaintiff to proceed on any claims against Moon and Alsum.

The plaintiff also names Sgt. Greff as a defendant, and alleges that he created a policy regarding prisoners having medications in their cells in the

---

[1] From the exhibits attached to the plaintiff's complaint, the court has discerned that Amy R is Amy Radcliffe. The Clerk of Court will update the docket, and the court will order that the complaint be served upon Amy Radcliffe.

9

segregation unit that resulted in deliberate indifference to the plaintiff's serious medical needs. The plaintiff suggests that Sgt. Greff could have allowed inmates with serious medical needs throughout the segregation unit to keep "non-control" medication in their cells. Dkt. No. 1 at 13. Instead, only one of the three ranges in the segregation unit (not the one the plaintiff was on) could keep that medication in their cells. Id. The court finds that the plaintiff may proceed on a claim that Sgt. Greff created a policy regarding non-control medication which was deliberately indifferent to his serious medical need (which need required that he have access to his medication any time a headache began).

Finally, the plaintiff named Donald Strahota and Belinda Schrubbe as defendants. Neither are mentioned in the body of his complaint. In the section of his complaint where the plaintiff references each defendant and asks for a certain amount of money, he makes a conclusory allegation against each of these defendants that they "maliciously failed to train correctional staff properly, so they would not cause anyone under his/her care harm." Dkt. No. 13. This is insufficient to state a §1993 claim against either of these defendants, and the court will dismiss them.

### III. PLAINTIFF'S MOTION FOR THE APPOINTMENT OF COUNSEL (DKT. NO. 3)

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a

10

reasonable effort to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

In his March 12, 2015, motion, the plaintiff did not include any information about his attempts to hire a lawyer on his own. Dkt. No. 3. On July 29, 2015, however, the court received a declaration in support of the plaintiff's motion to appoint counsel. Dkt. No. 14. In that declaration, the plaintiff documented his attempts to secure counsel on his own. The court concludes that this declaration satisfies the first Pruitt factor, leaving the court to decide whether, given the difficulty of the case, the plaintiff is competent to represent himself.

The plaintiff very clearly and competently has presented his claims to the court. His claims are fact-based, and relate to what he and the defendants said and did, not to some complex legal argument. At this stage, the court concludes that the plaintiff's case is not so complicated that he can't adequately represent himself. See Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655).

## IV. PLAINTIFF'S MOTION *IN LIMINE* (DKT. NO. 15)

The plaintiff filed a motion *in limine* on July 29, 2015. Dkt. No. 15. He asks the court to suppress details regarding his criminal convictions and information regarding a conduct report that is the subject of another pending lawsuit, because he believes this information will prejudice his case. The plaintiff has filed this motion too soon; it is too early for the court to make decisions about what evidence it might or might not admit at any future trial. After the court enters this order, and after the defendants have been served with and responded to the complaint, the parties will embark on discovery, which means that each side will turn over to the other side any information relevant to the allegations in the complaint. After that, the parties may, if they wish, file motions for summary judgment, where the court will decide whether the evidence shows that there are any material facts in dispute. Only if the court denies summary judgment will the court schedule a trial, and only then will the court begin to determine what evidence may or may not be admissible at that trial. The court will deny this motion without prejudice; if the court ends up setting the case for trial, the court will notify the parties of deadlines for filing motions *in limine*.

## V. CONCLUSION

The court **ORDERS** that the plaintiff may proceed *in forma pauperis*. The court **DENIES AS MOOT** the plaintiff's motion for use of his prison release account to pay his initial partial filing fee (Dkt. No. 9). The court **ORDERS** the Secretary of the Wisconsin Department of Corrections or his designee to collect

12

Case 2:15-cv-00276-PP   Filed 12/30/15   Page 12 of 15   Document 17

from the plaintiff's prison trust account the $342.21 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The Secretary or his designee must clearly identify payments by the case name and number assigned to this case.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. (Dkt. No. 3).

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion *in limine.* (Dkt. No. 15).

The court **DISMISSES** the following individuals as defendants to this action: Lt. Larsen, William Pollard, Charles Facktor, Cindy O'Donnell, Tony Meli, Sgt. John Danke, Captain Olsen, Jane Doe, Security Office Secretary, Tonia Moon, Lori Alsum, Strahota and Schrubbe.

The court **ORDERS** that the plaintiff may proceed on Eighth Amendment medical care claims against the follow defendants: Amy Radcliffe, Donna Larson, and Sgt. Greff.

The court **ORDERS** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's amended complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the following state

13

defendants: Amy Radcliffe, Donna Larson, Tonia Moon, Lori Alsum, and Sgt. Greff.

The court further **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants who are served with the amended complaint shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if the plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The court further advises plaintiff that if he does not timely file documents, the court may dismiss his case for failure to prosecute.

In addition, the parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

14

Case 2:15-cv-00276-PP   Filed 12/30/15   Page 14 of 15   Document 17

The court will send a copy of this order to the warden of the institution where the inmate is confined.

Dated in Milwaukee, Wisconsin this 30th day of December, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge